**United States District Court for the Eastern District of Pennsylvania**

| | | |
|---|---|---|
| Jarvis Parker | : | |
| | : | |
| v. | : | Civil Action No. 20-cv-2175 |
| | : | |
| Cenlar FSB, a subsidiary of Cenlar Capital Corporation | : | |

## Plaintiff's Memorandum of Law in Opposition to Defendant Cenlar FSB's Motion to Dismiss the Second Amended Complaint

Plaintiff, Jarvis Parker, by and through his attorney, hereby submits this Memorandum of Law in opposition to Defendant Cenlar FSB's Motion to Dismiss the Second Amended Complaint.

## I. Introduction

This is an employment discrimination case in which Mr. Parker contends in the Second Amended Complaint that his employment with defendant was terminated because of his race, African American, and in retaliation for his complaints about race discrimination, in violation of The Civil Rights Act of 1866, 42 U.S.C. Section 1981 ("Section 1981), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d and 2000e *et seq*. ("Title VII), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. (the "PHRA"), because of his disability in violation of the PHRA and the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq*. (the "ADA"), and that his termination gives rise to a claim for Intentional Infliction of Emotional Distress. Defendant has moved to dismiss all six claims asserted in the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the Court should deny Defendant's Motion to Dismiss.

## II. Background Facts

For purposes of this Memorandum of Law, Mr. Parker accepts the facts recited in the "Factual Background" set forth at pages 4-5 of Defendant Cenlar FSB's Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint ("Defendant's Memorandum"), but only to the extent that those facts accurately reflect the allegations of the Second Amended Complaint.

## III. Argument

As a preliminary matter, the Court should disregard the obnoxious "holier than thou" posture espoused by defendant throughout Defendant's Memorandum. In addition, Mr. Parker has filed ***three*** Complaints in this action, not ***five***, as defendant repeatedly incorrectly asserts in Defendant's Memorandum. In that regard, that Mr. Parker filed an EEOC Charge, and its contents, are irrelevant to whether he has stated claims for relief under Rule 12(b)(6) in the Second Amended Complaint. This is particularly so, given that defendant has not alleged that any of the claims asserted in the Second Amended Complaint were not also alleged in his EEOC Charge. Moreover, defendant's contention that some of the claims alleged in the Second Amended Complaint should be dismissed because Mr. Parker supposedly alleged facts in the Second Amended Complaint that he withheld from alleging in his two prior Complaints, or that he should have known before filing the Second Amended Complaint, simply is not true and should be rejected. And in any event, that contention is wholly irrelevant to the matter before the Court because as is made clear herein, the facts alleged in the Second Amended Complaint are sufficient to state claims for relief under Section 1981, Title VII, the ADA, the PHRA and for Intentional Infliction of Emotional Distress.

### A. Standard of Review for Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[S]tating … a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements of a claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Id*.

### B. Mr. Parker Has Alleged Facts Sufficient to Establish His Claim of Joint Employment With Respect to His Title VII, ADA and PHRA Claims.

In a broad attack on his Title VII, ADA and PHRA claims, defendant asserts that Mr. Parker has failed to allege facts that "demonstrate the existence of an 'employment relationship' with defendant." *See*, *e.g*., *Faush v. Tuesday Morning*, 808 F.3d 208, 212 (3d Cir. 2015). To the contrary, *Faush* indicates beyond doubt that Mr. Parker has alleged in the Second Amended Complaint facts which show that defendant was his employer for purposes of Title VII, the ADA and the PHRA.

In Defendant's Memorandum, defendant advances the absurd contention that the allegations of paragraph 10 of the Second Amended Complaint contain only one factual allegation supporting the existence of an employment relationship between Mr. Parker and defendant. In truth, paragraph 10 contains no less than 12 allegations of fact supporting the existence of an employment relationship between Mr. Parker and defendant, to wit:

1. Defendant had control over and directed Mr. Parker's daily employment activities;
2. Defendant was the source of the instrumentalities and tools Mr. Parker used in performing his job duties;
3. Mr. Parker worked at defendant's offices in Yardley, Pennsylvania;
4. Mr. Parker did not work from any job site of firstPRO;
5. Defendant had the right to assign work projects to Mr. Parker;
6. Defendant determined when and how long Mr. Parker worked;
7. Mr. Parker performed work that was part of defendant's regular business;
8. Defendant paid firstPRO for each hour worked by Mr. Parker at the agreed-upon hourly rate of $75/hour;
9. Defendant had ultimate control over whether Mr. Parker was permitted to work at its Yardley office;
10. Defendant's employees directly supervised Mr. Parker;
11. Defendant's employees instructed Mr. Parker on the details of his work;
12. Defendant's employees provided Mr. Parker the specific training he needed; and
13. Defendant's employees verified the number of hours Mr. Parker worked.

Defendant's contention that because Mr. Parker, for example, did not specify that defendant provided him the pens and pencils he used in his daily work, *see* Defendant's Memorandum at 26, the allegations of paragraph 10 fall short of the *Faush* standard, is laughable.

Moreover, although not necessary for purposes of finding that the allegations of the Second Amended Complaint sufficiently allege the existence of an employment relationship with defendant, Mr. Parker will adduce the following facts during discovery which will establish beyond doubt that defendant was his employer:

a. He was required to report to defendant's Yardley office every day and work 8 hours per day;
b. He was required to take all of the mandatory compliance training courses that defendant's full-time employees were required to take;
c. He was required to manage his projects according to the prescribed Cenlar Project Management methodology;
d. Mr. Lieb shadowed Mr. Parker every day, even to the extent of reviewing the emails that Mr. Parker sent to his project stakeholders; and
e. He was required to meet weekly with Mr. Lieb to review his deliverables and make any adjustments based on Mr. Lieb's direction.

Accordingly, the Court should find that Mr. Parker has alleged facts sufficient to establish an employment relationship with defendant for purposes of his Title VII, ADA and PHRA claims.[1]

### C. The Second Amended Complaint States a Claim Under the ADA and the PHRA.

Defendant has challenged the sufficiency of Mr. Parker's ADA and PHRA disability claims on two grounds: 1) that he did not plead that he was disabled within the meaning of the ADA, and 2) that his conduct constituted a "direct threat" under the ADA justifying his termination. Both grounds have no merit and should be rejected by the Court.

For purposes of defendant's Motion to Dismiss, the relevant allegations of the Second Amended Complaint related to Mr. Parker's disability claims are as follows:

> 20. On Thursday, March 12, 2020, Mr. Parker informed Lieb and Boutcher that a Professor at the Rutgers-New Brunswick campus had tested positive for the coronavirus. Mr. Parker also informed them that he did not attend classes at the Rutgers-New Brunswick campus.
>
> …
>
> 22. Mr. Parker did not attend classes at the Rutgers-New Brunswick campus at any time during his employment with defendant.
>
> …

---

[1] Defendant has not otherwise challenged Mr. Parker's Title VII claim. To the extent defendant attempts to do so in a reply memorandum, the Court should reject such a challenge. In addition to alleging the requisite employment relationship, to state a claim for relief under Title VII in a termination case, a plaintiff must allege 1) that he is a member of a protected class, 2) that he was qualified for the position he held, 3) that he suffered an adverse employment action, and 4) that similarly situated employees were not terminated for engaging in similar conduct, or that the circumstances surrounding the termination give rise to an inference of discrimination. Mr. Parker has alleged facts in the Second Amended Complaint establishing each of those elements of a *prima facie* case of race discrimination under Title VII. In addition, because claims brought under the PHRA are generally interpreted coextensively with Title VII claims, *Brown v. J. Kaz, Inc*., 581 F.3d 175 (3d Cir. 2009), and defendant's contention that Mr. Parker failed to exhaust his administrative remedies under the PHRA is without merit, the Court should also find that Mar. Parker has alleged facts in the Second Amended Complaint establishing each of the elements of a *prima facie* case of race discrimination under the PHRA. Accordingly, the Court should deny defendant's Motion to Dismiss Counts I and II of the Second Amended Complaint.

53. Although Mr. Parker was not exposed to the coronavirus, defendant presumed that he had been, and viewed his perceived exposure as a disability within the meaning of the ADA.

54. Defendant terminated Mr. Parker's employment because of his perceived disability, exposure to the coronavirus.

55. In its Position Statement letter to the EEOC dated September 11, 2020 in connection with the EEOC Charge of Discrimination filed by Mr. Parker, defendant effectively admitted it terminated Mr. Parker's employment because of his perceived disability, exposure to the coronavirus:

> "…despite clear instructions from Cenlar to work at home, [Mr. Parker] returned to the office after he had notified Cenlar that he might have been exposed to the Coronavirus. Even had Cenlar not placed [Mr. Parker's] projects on hold, [his] actions in returning to the office would have both constituted a direct threat to the safety of other Cenlar workers and been a legitimate business reason to stop using [Mr. Parker's] services."

Position Statement letter to EEEOC dated September 11, 2020, p.1.

…

63. Defendant's termination of Mr. Parker's employment because of his perceived disability, exposure to coronavirus, constituted disability discrimination under the PHRA and violated the PHRA.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege 1) that he is a disabled person within the meaning of the ADA, 2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and 3) that he suffered an adverse employment action as a result of discrimination based on his disability. See *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). The allegations set forth above clearly establish a *prima facie* case of disability discrimination. Mr. Parker alleged that defendant viewed his presumed exposure to the coronavirus as a disability within the meaning of the ADA. SAC ¶ 53. He further alleged that he was otherwise qualified to perform the essential functions of his position as a Project Manager. *Id*. ¶ 12. And he alleged that he was terminated because of his disability. *Id*. ¶¶ 54-56, 63. Moreover, at the pleading

stage, a plaintiff's mere allegation of disability qualifies him for protection under the ADA. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 214 (3d Cir. 2009).

In this regard, given the devastating impact of the coronavirus in the United States[2], it is shameful, shocking and ridiculous that defendant would contend that the coronavirus is "transitory and minor," like the common cold or flu, see Defendant's Memorandum at 9. The current statistics in the United States related to the coronavirus tell a much different story than the one defendant attempts to foist upon the Court. Moreover, in today's world, insofar as the coronavirus is concerned, there is no practical difference between being perceived as having contracted the coronavirus or being perceived as having been exposed to the coronavirus. Defendant clearly believed both with respect to Mr. Parker.

Moreover, defendant has failed to cite any case that negates the principle of *Fowler*. And in any event, whether defendant perceived Mr. Parker as having the coronavirus or having been exposed to the coronavirus is a question of fact for resolution at a later stage of this case.

With respect to defendant's contention that it was justified in terminating Mr. Parker because he posed a "direct threat" to its employees, that contention is unavailing. The "direct threat" argument is an affirmative defense to a disability discrimination claim. As with all affirmative defenses, defendant has the burden of proof. In this regard, Mr. Parker did not allege in the Second Amended Complaint that he was exposed to the coronavirus, and he has never made that contention. Defendant's contention that Mr. Parker constituted a direct threat not only is a question of fact that cannot be resolved in the context of a motion to dismiss, but also a

---

[2] According to Johns Hopkins University, as of 4:11p.m. on November 30, 2020, there have been 13,492,101 reported cases of the coronavirus and 267,600 deaths caused by the coronavirus since March 2020.

contention that cannot be employed to compel dismissal of a *prima facie* claim of disability discrimination.

Accordingly, because there is no doubt that Mr. Parker has alleged all of the essential elements of a claim for disability discrimination under the ADA and the PHRA, the Court should deny defendant's Motion to Dismiss Counts IV and V of the Second Amended Complaint.

**D. The Second Amended Complaint States Claims Under the PHRA.**

Defendant contends that Mr. Parker should not be permitted to assert any claims under the PHRA because he allegedly failed to exhaust his administrative remedies. Defendant asserts that Mr. Parker allegedly failed to check a box indicating that his Charge should be dual-filed with the EEOC and the Pennsylvania Human Relations Commission. Nothing could be further from the truth. The EEOC Charge filed by Mr. Parker is attached hereto as Exhibit 1 and made a part hereof. The first page of the Charge of Discrimination clearly states that it was filed with "Pennsylvania Human Relations Commission and EEOC." Accordingly, there is no impediment to Mr. Parker asserting race, retaliation and disability claims against defendant in the Second Amended Complaint under the PHRA.

**E. Mr. Parker Has Stated a Claim For Intentional Infliction of Emotional Distress Under Pennsylvania And New Jersey law.**

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege "(1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Chuy v. Phila. Eagles Football Club*, 565 F.2d 1265, 1273 (3d Cir. 1979). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). "It is for the Court to determine in the

first instance whether the conduct is extreme and outrageous, such that recovery may be permitted." *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (citing *Small v. Juniata College*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996).

In Count IV of the Second Amended Complaint, Mr. Parker asserts a claim for intentional infliction of emotional distress. In support of this claim, Mr. Parker incorporated the factual allegations set forth in paragraphs 1-31, inclusive, of the Second Amended Complaint. See SAC ¶ 66. Thus, Mr. Parker's claim is not, as defendant contends, derivative of his claims of race and disability discrimination and retaliation. Rather, this claim is based not only on defendant's termination of his employment because of his race and in retaliation for having complained about race discrimination, but also on defendant's treatment of Mr. Parker with respect to the Covid-19 pandemic and its duplicity with regard to its contention that Mr. Parker was being terminated due to lack of work. Therefore, defendant's contention that this claim is "explicitly premise[d]" on the conduct that he alleges violates Section 1981, Title VII and ADA claim must be rejected.

Accordingly, the Court should deny defendant's Motion to Dismiss Count VI of the Second Amended Complaint.

**F. There is no Basis to Dismiss Mr. Parker's Section 1981 Claim.**

Defendant contends that Mr. Parker's Section 1981 claim in Count III of the Amended Complaint must be dismissed because 1) his allegations of joint employment cannot establish liability under Section 1981, 2) he was not an intended third-party beneficiary of the Cenlar/First Pro contract (the "Contract") under either New Jersey or Pennsylvania law, and 3) defendant's discrimination did not impair his employment relationship with defendant. None of those reasons provides sufficient justification for the Court to dismiss the Section 1981 claim. In fact,

each of them requires a fact-based inquiry, which cannot occur until the Court, at a minimum, permits the parties to engage in limited discovery on those issues.

1. Mr. Parker's joint employment allegations are sufficient to state a claim under Section 1981.

As discussed above, the allegations of the Second Amended Complaint are sufficient to establish an employment relationship between Mr. Parker and defendant. Contrary to defendant's contention, *Faush v. Tuesday Morning, Inc*., 808 F.3d 208, 220 (3d Cir. 2015) demonstrates that the joint employment allegations of the Second Amended Complaint are sufficient to establish liability under Section 1981.

Accordingly, the Court should deny defendant's Motion to Dismiss Count III on this basis.

2. Mr. Parker is entitled to discovery on his allegations that he was an intended third-party beneficiary of the contract between First Pro and Cenlar.

As defendant has admitted, both the Supreme Court and the Third Circuit have acknowledged the possibility that in an appropriate case, a plaintiff in Mr. Parker's status may be found to be an intended third-party beneficiary of a contract between an employment agency and its client-employer. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 n. 3 (2006); *Faush*, supra, 808 F.3d 208 at 220 n.13 (3d Cir. 2015). Mr. Parker has alleged in the Second Amended Complaint that he was an intended third-party beneficiary of the contract between First Pro and Cenlar, and that he had the right to enforce the promise therein to be free from race discrimination and retaliation. SAC ¶ 45.

Although the ultimate issue of whether a person is an intended third-party beneficiary of a contract is a question of law to be decided by the court, that question can only be answered by reference to ***facts*** that elucidate 1) whether the recognition of intended third-party beneficiary

status is appropriate to effectuate the intention of the contracting parties, 2) whether the contracting parties actually intended the person to be a third-party beneficiary with enforceable rights, and 3) whether the circumstances surrounding the creation of the contract indicate that the promise intended to give the beneficiary the benefit of the promised performance. See, e.g., *Cmty. Ass'n Underwriters of America, Inc. v. Rhodes Dev. Grp., Inc.*, 805 F. Supp. 2d 95, 103 (M.D. Pa. 2011). Thus, here, Mr. Parker should be accorded a reasonable period of time to conduct discovery on the issue of whether Cenlar and First Pro intended their contract to directly benefit him.

Accordingly, the Court should deny defendant's Motion to Dismiss Count III on this basis and order a period of limited discovery on the issues described above.

3. Mr. Parker sufficiently alleged discrimination in the formation of an employment contract with defendant.

Regardless of how much defendant attempts to distort and misinterpret the allegations of the Second Amended Complaint, it is clear that Mr. Parker sufficiently has alleged that he was prevented from entering into an employment contract with defendant because of his race and in retaliation for his complaints about race discrimination. Specifically, the Second Amended Complaint, fairly read, clearly indicates that Mr. Parker alleges he was not hired by defendant, as had been implicitly promised by Mr. Lieb, because of his race.

Accordingly, the Court should deny defendant's Motion to Dismiss Count III on this basis.

## IV. Conclusion

For the foregoing reasons, Plaintiff, Jarvis Parker, respectfully requests that the Court deny Defendant Cenlar FSB's Motion to Dismiss the Second Amended Complaint in its entirety.


*s/Robert T Vance Jr*
Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia PA 19110
215 557 9550 tel / 215 278 7992 fax
rvance@vancelf.com

*Attorney for Jarvis Parker*